```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
NATIONAL SATELLITE SPORTS, INC.,

                    Plaintiff,

        - against -                      REPORT AND
                                         RECOMMENDATION
J.A. ROCKS, INC., d/b/a
Rapture Cocktail Lounge & Café,          CV 2001-5710
and AUDREY MURDOCK, Individually         (ERK) (MDG)
and as an officer, director,
and/or shareholder of J.A.
Rocks, Inc.,

                    Defendants.
- - - - - - - - - - - - - - - - - -X
```

GO, United States Magistrate Judge:

Plaintiff National Satellite Sports, Inc. (hereinafter "National" or "plaintiff") brought this action under Title 47 of the United States Code alleging that defendants J.A. Rocks, Inc. d/b/a Rapture Cocktail Lounge & Café and Audrey Murdock (collectively referred to as "defendants") violated sections 553 and 605 by intercepting and displaying to their patrons, without authorization, plaintiff's otherwise scrambled transmission of a boxing match held on January 16, 1999 ("the match"). Amended Complaint ("Am. Compl.") (ct. doc. 9) at ¶¶ 7, 14-22.

Defendants failed to appear or otherwise defend this action. Ct. doc. 5. By order dated July 29, 2002, the Honorable Edward R. Korman referred this case to me for a report and recommendation on the issue of damages.

PERTINENT FACTS

The undisputed facts pertinent to determination of this motion are set forth in the Am. Compl.; the October 30, 2001 affidavits of service ("Service Affs.") attached as Ex. A to the Motion for Default Judgment (the "Motion") (ct. doc. 10); the February 25, 2002 affidavit of Richard Klass ("Aff. for Judgment") attached to the Motion; the January 24, 2002 affidavit of Skip Klauber ("Klauber Aff.") attached as Ex. C to the Motion; the January 22, 1999 affidavit of investigator Anthony Kearney ("Kearney Aff.") attached as Ex. D to the Motion; and the February 26, 2002 Affidavit in Support of Request for Attorney's Fees ("Fees Aff.") attached as Exh. E to the Motion. Defendants did not file any opposing papers.

Plaintiff is a corporation organized and existing under the laws of the State of Florida, with its principal place of business located in Boca Raton, Florida. Am. Compl. at ¶ 4. Defendant J.A. Rocks, Inc. is a New York corporation authorized to do and transact business as "Rapture Cocktail Lounge & Café" in Queens, New York and defendant Audrey Murdock is an officer, director and shareholder of J.A. Rocks, Inc. Id. at ¶¶ 5-6.

Plaintiff entered into a closed-circuit television licensing agreement with the producers of the championship boxing match between Mike Tyson and Francois Botha ("the match") to broadcast the match and all undercard bouts on January 16, 1999. Id. at ¶ 7. The transmission of the match was broadcast by satellite uplink and subsequent cable transmission and was electronically coded or "scrambled." Id. at ¶ 11. Plaintiff then retransmitted the signals to subscriber establishments, enabling them to view

only those broadcasts for which they had paid. Id. at ¶¶ 9-10. The establishments that were authorized to broadcast the match were given electronic decoding equipment and the satellite coordinates to receive a clear telecast of the match. Id. at ¶ 13. Defendants did not contract with National and thus were not authorized to receive and publish the match. Id. at ¶¶ 12, 21. As set forth in his affidavit, Investigator Anthony Kearney observed the unauthorized public showing by Rapture Cocktail Lounge of the match to approximately 15 patrons. Kearney Aff. at 1. Kearney entered the establishment at 10:14 p.m. on January 16, 1999 and observed, inter alia, the post fight commentary on an undercard bout. Id.

Plaintiff served the corporate defendant J.A. Rocks, Inc. by serving a person authorized to accept service on behalf of the corporation pursuant to section 311 of the New York Civil Practice and Law Rules. See Service Affs. Plaintiff served the individual defendant Murdock by leaving process with a co-worker at Murdock's place of business and mailing a copy to said defendant at this location. See id. Since New York law permits service upon corporations by service on an authorized agent and individuals at their actual place of business, see N.Y. Civil Prac. Law and Rules §§ 308, 311, I find that service was properly effectuated upon both defendants. Since neither of these defendants appeared, default is properly entered against them.

Following defendants' failure to answer plaintiff's complaint, plaintiff filed a motion for judgment by default. See ct. doc. 10.

DISCUSSION

I.  Legal Standards Governing Default

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages.  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Reality Corp., 973 F.2d 155, 158 (2d Cir.), cert. denied., 113 S. Ct. 1049 (1993); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged.  Id. at 69-70.  The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded."  Greyhound, 973 F.2d at 159.

The court must ensure that there is a reasonable basis for the damages specified in a default judgment.  Actual damages or statutory damages may be assessed.  In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence.  Action S.A. v. Marc Rich and Co., Inc., 951 F.2d 504, 508 (2d Cir.), cert. denied, 503 U.S. 1006 (1992) (quoting Fustok v. Conticommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989)).  The moving party is entitled to all reasonable inferences from the evidence it offers.  Au Bon Pain, 653 F.2d at 65 (citing Trans World Airlines, Inc. v. Hughes, 308 F. Supp. 679, 683 (2d Cir. 1969)).

II. Determination of Damages

   A. Liability

Both sections 553 and 605 of Title 47 prohibit the unauthorized reception of cable programming. Section 553(a)(1) specifically applies only to cable transmissions and provides that, "[n]o person shall intercept or receive ... or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Section 605(a) generally provides that, "[n]o person not being authorized by the sender shall intercept any radio communication ... or assist in receiving any interstate or foreign communication by radio and use such communication for his own benefit or the benefit of another not entitled thereto."

The Second Circuit in Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130 (2nd Cir.), cert. denied sub nom Noel v. Int'l Cablevision, Inc., 519 U.S. 929 (1996) ("Sykes II"), held that section 605 applies to "the interception of cable-borne, as well as over-the-air, pay television" where cable-borne transmissions originate as satellite transmissions. The Sykes II court also recognized that sections 553 and 605 are not mutually exclusive and when certain television programming is transmitted or intercepted over both cable and satellite mediums, both statutes apply. Id.

Plaintiff's submissions establish that the defendants violated sections 553 and 605 of Title 47 by intercepting and receiving the match without authorization. Am. Compl. at ¶¶ 12,

14-18. Plaintiff is in the business of distributing the television broadcasts of sporting events and, in particular, had the right to distribute the match and all undercard bouts in the State of New York on January 16, 1999. Id. at ¶¶ 7-10. Investigator Kearney observed the match being displayed at Rapture Cocktail Lounge, a business operated by defendant J.A. Rocks, Inc., without having first contracted with plaintiff to do so. Kearney Aff. at 1; Am. Compl. at ¶ 5. Consequently, this Court finds that defendant J.A. Rock's unlicensed reception and exhibition of the transmissions violated sections 553 and 605 of Title 47.

However, the liability of Audrey Murdock, the individual defendant, involves different and additional considerations from the liability of the corporate owner of the bar. There is no evidence or well-pled allegation establishing that such violations were committed by defendant Murdock who has been sued individually as an officer, director and/or shareholder of J.A. Rocks, Inc. A party may be vicariously liable for infringement if she has "the right and ability to supervise" the infringing activities and had "an obvious and direct financial interest in the exploitation of [the] copyrighted materials" or contributorily liable if she "authorized" the infringing conduct. See Sofitel Inc. v. Dragon Med. & Sci. Comm., 118 F.3d 955, 971 (2d Cir. 1997); Sygma Photo News, Inc. v. High Soc. Magazine, Inc., 778 F.2d 89, 92 (2d Cir. 1985) (persons "who participate in, exercise control over or benefit from an infringement are jointly and severally liable as copyright infringers"); Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162

(2d Cir. 1971).  There is simply no allegation in any of the submissions regarding defendant Murdock's conduct.  Nor has plaintiff provided any authority to establish that liability for cable theft under Title 47 may be imposed on corporate shareholders without proof of some participation.  Thus, I recommend that no damages be awarded against Murdock.

    B.   <u>Damages</u>

Plaintiff requests damages pursuant to both sections 605 and 553.  <u>See</u> Aff. for Judgment at ¶ 5.

Sections 553 and 605 allow prevailing plaintiffs to elect to recover either actual damages and lost profits, or statutory damages.  <u>See</u> 47 U.S.C. § 553(c)(3)(A); 47 U.S.C. § 605(e)(3)(C)(I).  Where a defendant is liable under both sections, plaintiff is entitled to have damages awarded only under section 605 because it provides greater recovery than does section 553.  <u>See</u> <u>Sykes II</u>, 75 F.3d at 127; <u>Entertainment by J&J, Inc. v. Mama Zee Rest. & Catering Servs.</u>, No. 01-CV-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (recovery under both sections 605 and 553 is impermissible).  Section 605(e)(3)(C)(i)(II) authorizes statutory damages of no less than $1,000 and no more than $10,000 for "each violation" of section 605(a).  In addition, section 605(e)(3)(C)(ii) vests the court with the discretion to increase the award of damages where "the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain."  The court is authorized to award enhanced damages of up to $100,000 for each violation of

willfulness.  Section 605(e)(3)(C)(i)(II) vests the court with the discretion to determine the amount of statutory damages, authorizing the court to award an amount "as the court considers just."  See HBO v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993); see also Joe Hand Promotions, Inc. v. Nekos, 18 F. Supp. 2d 214, 217 (N.D.N.Y. 1998).

In exercising such discretion, courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy.  See Cablevision Sys. New York City Corp. v. Faschitti, No. 94 Civ. 6830 (DC), 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996); see also Sykes, 75 F.3d at 132 (quoting legislative history).  The court should therefore grant damages in an amount which achieves the deterrent purposes of the statute.  See Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 113 (E.D.N.Y. 1997).

Plaintiff seeks to recover statutory damages in the amount of $10,000.00 and enhanced damages of $50,000.00 for willful violation.  See Aff. for Judgment at wherefore clause.  Some courts, when presented with sufficient evidence indicating the number of patrons present at the time of the unauthorized programming, have employed a formula that multiplies that number by a dollar amount, usually based on the customary charge for the event in question.  See, e.g., Mama Zee, 2002 WL 2022522, at *10 (awarding $50.00 per patron); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (same); Time Warner Cable of New York v. Taco Rapido Restaurant, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (same); Cablevision Sys. Corp. v. 45 Midland Enters., Inc., 858 F. Supp.

42, 45 (S.D.N.Y. 1994) (same). Others have simply assessed a flat damage amount per violation. See Kingston Pay-Per-View Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438 (S.D.N.Y. 2001) (awarding a flat rate of $5,000); Garden City Boxing Club, Inc. v. Ayisah, 02 Civ. 6673, 2004 U.S. Dist. LEXIS 7867 (S.D.N.Y. Apr. 28, 2004) (awarding $3,000 statutory damages and $5,000 enhanced damages for one-time exhibit of boxing match to 60 customers); Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 U.S. Dist. LEXIS 12159 (S.D.N.Y. June 30, 2004) (awarding $1,000 statutory damages and $1,500 enhanced damages for one-time exhibits of boxing match to about twenty customers).

Plaintiff asserts that there are a number of components to the pecuniary loss suffered here, including lost sublicense fees, lost admission charges, and loss of good will. Here, plaintiff not only lost the sublicense fee that it would have been entitled to charge had the defendant entered into an agreement to broadcast the match, but also the potential admission fees for at least fifteen (15) patrons present during the unauthorized broadcast. In addition, as plaintiff argues, theft of its services deprives plaintiff of its good will, reputation, and business investment by raising costs to its paying customers and deterring potential paying customers from seeking proper authorization from plaintiff to televise plaintiff's programming.

Plaintiff has submitted sufficient evidence of the number of patrons (15) present at Rapture Cocktail Lounge during the illegal broadcast. Kearney Aff. at 1. However, if the Court were to apply the formula used by other courts in comparable cases, basing the award of damages on $50 per patron, then the

amount of damages would be $750, less than the $1,000 minimum amount of authorized statutory damages. Moreover, that formula has been in use for more than ten years. Also, since the investigator apparently was at Rapture Cocktail Lounge before the broadcast of the main match, more patrons may have entered the premises later. Thus, I recommend that plaintiff be awarded statutory damages based on $100 per patron in the amount of $1,500 under section 605 against defendant J.A. Rocks, Inc.

Further, I recommend that the Court award enhanced damages against defendant J.A. Rocks, Inc. Defendants who intercept signals and broadcast programming without authorization "in a place of business where certain events are shown to the public" are generally held to have acted willfully and for purposes of commercial advantage. American Cablevision of Queens v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing Cablevision Systems Corp. v. Maxie's North Shore Deli Corp., No. CIV.A.88-2834, 1991 WL 58350 (E.D.N.Y. 1991)).

The undisputed facts presented by plaintiff in its complaint and the supporting affidavits clearly establish that Rapture Cocktail Lounge is a commercial establishment that publicly displayed plaintiff's programs to patrons. Plaintiff's submissions support the inference that on January 16, 1999, Rapture Cocktail Lounge's business increased as a result of displaying the match. Rapture Cocktail Lounge may likewise be presumed to have shown the January 16, 1999 match for purposes of commercial gain. Thus, I find that defendant J.A. Rocks, Inc.'s actions were willful violations of section 605.

In order to deter defendant J.A. Rocks, Inc. from further

violations, I recommend that this court award enhanced damages under section 605 (e)(3)(C)(ii) equal to three times the amount of damages awarded under section 605(e)(3)(C)(I). See, e.g., Kingvision Pay-Per-View, Ltd. v. Body Shop, No. 00 CIV. 1089, 2002 WL 393091, at *4 (S.D.N.Y. Mar. 13, 2002) (awarding $10,000 in enhanced damages against a bar which broadcast a boxing match without authorization); Joe Hand Promotions, Inc. v. West, No. CIV.A.99-0983E(M), 2000 WL 1610666, at *2 (W.D.N.Y. Oct. 25, 2000) (where no special circumstances are shown, a trebling of damages is a "reasonable deterrent against future violations") (quoting Goodies Luncheonette, Inc., 77 F. Supp. 2d at 490-91). In this case, I recommend an award of enhanced damages of $4,500.

   C.   Attorney's Fees

Plaintiff also seeks to recover its attorney's fees and costs. Title 47 U.S.C. § 605(e)(3)(B)(iii) mandates that reasonable attorney's fees and costs be awarded to a prevailing aggrieved party. Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993) ("Sykes I"). The standard method for determining the amount of reasonable attorney's fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar. Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1940 (1983); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989), cert. denied, 496 U.S. 905 (1990).

In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the

client's case.  See Lunday v. City of Albany, 42 F.3d 131, 133
(2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir.
1985).  If any expenditure of time was unreasonable, the court
should exclude these hours from the lodestar calculation.  See
Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133.  The court
should thus exclude "excessive, redundant or otherwise
unnecessary hours, as well as hours dedicated to severable
unsuccessful claims."  Quaratino v. Tiffany & Co., 166 F.3d 422,
425 (2d Cir. 1999).  A party seeking attorney's fees bears the
burden of supporting its claim of hours expended by accurate,
detailed and contemporaneous time records.  New York State Ass'n
for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir.
1983).

The reasonable hourly rates should be based on "the
prevailing marketplace rates in the community for similar
services by a lawyer of reasonably comparable skill, experience,
and reputation."  Cruz v. Local Union No. 3, 34 F.3d 1148, 1159
(2d Cir. 1994).  Determination of the prevailing market rates may
be based on evidence presented or a judge's own knowledge of
hourly rates charged in the community.  Chambless, 885 F.2d at
1059.  The Court in Rotella found that "the prevalent market rate
in this district is in the range of $200 to $250 for partners and
between $100 and $200 for junior and senior associates."  Rotella
v. Bd. of Educ. of City of New York, No. 01 CIV. 0434, 2002 WL
59106, at *2-3 (E.D.N.Y. Jan. 17, 2002) (citations omitted)
(finding that rate of lead counsel in a small firm of $225 per
hour and rates of $135 and $100 per hour for junior counsel were
reasonable); see also SEC v. Goren, 272 F. Supp. 2d 202, 207

(E.D.N.Y. 2003).

Plaintiff seeks to recover $1,175.00 in attorney's fees, based on a rate of $250.00 per hour for counsel Richard Klass for 4.7 hours of work. Fees Aff. at ¶ 9. After reviewing plaintiff's submissions, I find that plaintiff has provided sufficient information to explain the time spent by counsel and that the time spent on this case is reasonable in light of the work completed.[1] I also find the rate sought be plaintiff to be reasonable based on my knowledge of prevailing rates for such matters in New York. See Rotella, 2002 WL 59106, at *2-3. Therefore, I recommend that plaintiff be awarded $1,175.00 in attorneys' fees.

CONCLUSION

For the foregoing reasons, I respectfully recommend that this Court award plaintiff $6,000.00 in statutory damages plus $1,175.00 in attorney's fees, for a total of $7,175.00 against defendant J.A. Rocks, Inc.

Copies of this Report and Recommendation will be sent by overnight mail or electronically to the parties on this date. Any objections to the recommendations made in this Report and Recommendation must be filed with the Clerk of this Court with a copy to the undersigned and the Honorable Edward R. Korman by June 2, 2006. Failure to file timely objections may waive the right to appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

---

[1] Although counsel had only spent 2.7 hours on this case when the Fees Aff. was prepared, he anticipated spending at least an additional two hours on this case. Fees Aff. at ¶ 4. I find that counsel's estimate is reasonable considering the work completed since the Fees Aff. was submitted.

72(b); <u>Small v. Secretary of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

    SO ORDERED.

Dated:    Brooklyn, New York
           May 11, 2006

                                  /s/
                            MARILYN D. GO
                            UNITED STATES MAGISTRATE JUDGE